UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

AMANDA S.                                :
                                         :
v.                                       :      C.A. No. 18-0001-JJM
                                         :
NANCY A. BERRYHILL, Acting               :
Commissioner of the Social Security      :
Administration                           :

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on January 2, 2018 seeking to reverse the Decision of the Commissioner. On June 29, 2018, Plaintiff filed a Motion for Reversal of the Disability Determination. (ECF Doc. No. 14). On July 18, 2018, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF Doc. No. 15). Plaintiff filed a Reply on August 31, 2018. (ECF Doc. No. 17). The Commissioner filed a Sur-reply on September 6, 2018. (ECF Doc. No. 18). A hearing was held on February 11, 2019.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion for Reversal (ECF Doc. No. 14) be GRANTED and that the Commissioner's Motion to Affirm (ECF Doc. No. 15) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB on October 21, 2015 (Tr. 208-211) and SSI on July 7, 2015 (Tr. 212-222) alleging disability since March 25, 2015. The applications were denied initially on October 20, 2015 (Tr. 98-108, 109-119) and on reconsideration on January 6, 2016. (Tr. 122-136, 137-151). Plaintiff requested an Administrative Hearing. On September 30, 2016, a hearing was held before Administrative Law Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 41-71). The ALJ issued an unfavorable decision to Plaintiff on December 20, 2016. (Tr. 13-36). The Appeals Council denied Plaintiff's request for review on November 3, 2017. (Tr. 1-6). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ committed several errors warranting reversal including the failure to properly evaluate her migraine headaches and bladder condition.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's findings are fully supported by substantial evidence and thus must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart,

274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527©. However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.  Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.  Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to

the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

   **1.   Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

   (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

   (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

   (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

   (4)   Treatment, other than medication, for relief of pain;

   (5)   Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

**A. The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's fibromyalgia, migraines and depression were "severe" impairments. (Tr. 19). The ALJ concluded at Step 3 that Plaintiff did not meet or medically equal any of the Listings. (Tr. 20). He found that Plaintiff had the RFC to perform a limited range of light work. (Tr. 21). The ALJ determined at Step 4 that Plaintiff could not perform any past relevant work. (Tr. 29). However, at

Step 5, the ALJ found that Plaintiff could transition to other unskilled, light jobs available in the economy and thus was not disabled for the period March 25, 2015 through December 20, 2016. (Tr. 30).[1]

### B. The ALJ's RFC Assessment is Not Supported by Substantial Evidence

Plaintiff persuasively argues that the ALJ did not adequately account for limitations related to her migraines and bladder problems in his RFC determination. Limitations which apparently resulted in an award of disability benefits as of December 21, 2016 – the day after the ALJ decision under review, i.e., the first date not precluded by res judicata. On balance, the interests of justice warrant a remand here to allow for further development of the record and consideration of the functional limitations resulting from Plaintiff's medically determinable impairments.[2]

First, as to Plaintiff's migraines, the ALJ found that such condition was a severe impairment at Step 2. Dr. Wilson, Plaintiff's treating primary care physician, documented her history of migraines and opined that, as of August 1, 2016, Plaintiff's symptoms would be severe enough to cause more than four absences from work per month. (Tr. 719). However, the ALJ gave Dr. Wilson's opinions "less probative weight" and found that his findings did not support the degree of functional limitation opined. (Tr. 28). The ALJ gave great probative weight to the state agency reviewing doctors' and psychologist's assessments and based his RFC determination on their opinions. (Tr. 27).

---

[1] The Court was advised by Plaintiff's counsel at the hearing that Plaintiff was recently awarded benefits on a subsequent application with an onset date of December 21, 2016. He represented that the award was based on an RFC finding that Plaintiff would have at least two unscheduled absences per month on a recurring basis, need additional unscheduled work breaks and generally be off task 20% of the workday.

[2] The Commissioner concedes that the ALJ made a Step 3 error in concluding that Plaintiff's migraines "cannot meet the severity of a listing" because it is not a listed impairment. (Tr. 20). The Commissioner "acknowledges" that this was an error because it "precludes the possibility of Plaintiff's impairment being equivalent in severity to a listed impairment" such as Listing 11.03. (ECF Doc. No. 15-1 at p. 25). However, the parties dispute whether this is a "harmless error" on this record. While the Court need not enter into the fray because there is other clear justification for remand, the ALJ on remand shall remedy this Step 3 error in compliance with 20 C.F.R. § 416.926(b)(2).

In his decision, the ALJ does not directly address Dr. Wilson's opinion regarding Plaintiff's probable absenteeism, or Plaintiff's self-reports and the medical records documenting multiple migraine headaches per week. The treatment records in 2014 reflect reports of four to five migraines per week and twenty to twenty-five per month. (Tr. 317, 433, 435). Plaintiff was approved for Botox injections due to the frequency of her migraines which resulted in some reduction. For instance, Dr. Gordon noted on March 23, 2016 that Plaintiff's "headaches seem to get better for about two and half months after Botox, but the last two weeks have been quite difficult for her with migraines every day." (Tr. 738). Dr. Hickey reported on August 3, 2016 that the Botox "helps – gets headache 2-3 migraines a week on this. Her last injection was in 6/16." (Tr. 652). On July 21, 2015, Dr. Griffith noted that Plaintiff was having three to four migraines per week and that "she had Botox in May and it helped some." (Tr. 466).

The ALJ discusses some of this evidence but never directly addresses the credibility of the reported frequency or the impact of such migraines on Plaintiff's attendance and ability to sustain full-time employment. The ALJ generally cited Dr. Wilson's treatment records (Exh. B38F) for the conclusion that he "opined" that Plaintiff's migraines were "generally stable in the context of Botox through her neurologist." (Tr. 22). However, these treatment records did not involve migraine-specific visits. Dr. Wilson did note on February 16, 2016 "migraines are about the same, meds had been adjusted, still getting botox per routine at neuro." (Tr. 694). He also noted that her migraines were "generally stable, doing Botox with neuro." (Tr. 695). On August 16, 2016, Dr. Wilson noted that Plaintiff's headaches were "worse off Topamax, stopped due to renal stones." (Tr. 702). While the ALJ accurately relates Dr. Wilson's "generally stable" record entry, he appears from the context of his findings to equate the term "stable" with improved or resolved. Stable, however, generally means that a medical condition is not deteriorating or worsening, i.e., it is unchanged.

While the state agency consulting physicians had access to the majority of medical records documenting Plaintiff's migraine history, they completed a physical RFC assessment that did not specifically assess the issue of absenteeism.[3] (Tr. 105-106, 130-132). A mental RFC assessment was conducted on reconsideration related to Plaintiff's depression. The state agency reviewing psychologist found that Plaintiff's ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances was "moderately limited." (Tr. 137). However, there is no indication that this finding was related to Plaintiff's migraines, and it was likely based primarily on "psychologically based symptoms." Id.

Second, as to Plaintiff's bladder issues, the ALJ concluded at Step 2 that Plaintiff's painful bladder syndrome, kidney stones and dysuria were "non-severe" impairments. (Tr. 19). An impairment is not "severe" when it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling 85-28. "The step two inquiry is a de mimimis screening device to dispose of groundless or frivolous claims." Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)); see also Lisi v. Apfel, 111 F. Supp. 2d 103, 110 (D.R.I. 2000). Here, the ALJ concluded that Plaintiff's painful bladder syndrome was non-severe "because [it has] been managed with medication with no on-going, secondary functional limitations that would cause more than a minimal effect on her ability to perform basic,

---

[3] At the hearing, the Commissioner's counsel acknowledged that a question on work absences was not part of the questionnaire they filled out. She pointed out that there was, however, room on the form to provide additional explanation or limitations. She argued that, while it is possible that the failure to address such limitations meant they were not considered, it is also reasonable to believe they were considered and the reviewing physicians did not find such limitations were warranted. A review of the documents suggests to the Court that the former is much more likely than the latter.

work-related tasks for a period of twelve months or more." (Tr. 19). The ALJ also found that the remaining impairments as a group (including kidney stones and dysuria) were non-severe because they "resolved completely or have remained episodic and have not required significant, ongoing medical intervention." Id.

Plaintiff argues that neither is supported by the record, and that her bladder problems worsened after the state agency reviewing physicians had rendered their opinions. Thus, Plaintiff contends that the ALJ erred by relying upon those "stale" opinions in making his Step 2 finding and that the ALJ improperly based his conclusion regarding the twelve-month duration element[4] on a lay interpretation of medical evidence.

Again, on balance, Plaintiff has convinced the Court that a remand is warranted. The state agency physicians rendered their opinions on October 20, 2015 and January 6, 2016, respectively. It is undisputed that Plaintiff's bladder issues required ongoing treatment throughout 2016. The ALJ acknowledged this and concluded that the evidence submitted after the state agency opinions were rendered was "consistent and cumulative" and did not warrant any change in the weight afforded to such opinions. (Tr. 27). However, the records do not reasonably appear to be either consistent or cumulative. As detailed in Plaintiff's Memorandum, the records reflect a worsening of Plaintiff's symptoms, and increased treatment including multiple bladder instillations – a procedure by which medication is instilled in the bladder by catheter. The updated medical evidence should be further evaluated by a medical expert to determine if the bladder conditions meet the Step 2 severity threshold and duration requirement, and for further consideration of the functional limitations arising out of Plaintiff's urinary issues.

---

[4] Pursuant to 20 C.F.R. § 404.1509, an impairment must last or be expected to last for a continuous period of at least twelve months to meet the duration requirement.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal (ECF Doc. No. 14) be GRANTED and that Defendant's Motion to Affirm (ECF Doc. No. 15) be DENIED. I further recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings, consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 22, 2019